FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 31, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RANDY JOE P.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:17-CV-00101-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 14 & 18. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Disability Insurance Benefits under Title II and his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. Jurisdiction

Plaintiff filed his application for Disability Insurance Benefits and his application for Supplemental Security Income on April 22, 2013. AR 185-98. His amended alleged onset date of disability is December 22, 2012. AR 19, 53-54. Plaintiff's applications were initially denied on August 28, 2013, AR 141-44, and on reconsideration on September 18, 2013, AR 146-51.

A hearing with Administrative Law Judge ("ALJ") Jesse Shumway occurred on August 27, 2015. AR 48-92. On September 14, 2015, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 19-33. The Appeals Council denied Plaintiff's request for review on January 24, 2017, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on March 23, 2017. ECF No. 5. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or he is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 42 years old at the alleged date of onset. AR 31, 185, 189. He has an education through the seventh grade. AR 31, 71-72, 308. Plaintiff is able to communicate in English. AR 31. Plaintiff has past work as a janitor, warehouse worker, green chain off bearer/puller, construction worker, and contribution solicitor. AR 31, 72.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from December 22, 2012, through the date of the ALJ's decision. AR 19, 33.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 22, 2012 (citing 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*). AR 21.

**At step two**, the ALJ found Plaintiff had the following severe impairments: borderline intellectual functioning; generalized anxiety disorder; dysthymic disorder; and degenerative disc disease of the cervical, thoracic, and lumbar spine (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 21.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 22.

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform light work, except: he cannot climb ladders, ropes, or scaffolds and can engage in all other postural activities only occasionally; he cannot reach overhead; he is limited to simple, routine tasks with a reasoning level of 2 or less and can engage in only simple decision making in a routine, predictable environment; and

he can have no contact with the public and only superficial contact with co-workers and supervisors. AR 25.

The ALJ found Plaintiff unable to perform his past relevant work. AR 31.

**At step five**, the ALJ found, in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 32. These include production assembler; cleaner, housekeeping; and hand inspector and hand packager. *Id*.

## VI. Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly discrediting Plaintiff's subjective complaint testimony; (2) improperly evaluating the medical opinion evidence; and (3) improperly assessing Plaintiff's residual functional capacity, and failing to identify jobs, available in significant numbers, that Plaintiff could perform despite his functional limitations

## VII. Discussion

**A. The ALJ did not err in finding Plaintiff's subjective complaints not entirely credible.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 25-29. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. *Id*.

First, the ALJ found that Plaintiff's allegations of disabling limitations are belied by his daily activities. AR 30-31, 37. These include his ability to be independent in all areas of his self-care, prepare meals, clean the house, drive, go shopping, go fishing, use public transportation, mow the lawn on a regular basis, ride his bicycle, go on walks, and generally be cooperative and pleasant. AR 26, 83-84, 235-38, 292, 295, 301, 308. Additionally, Plaintiff testified that some of his physical symptoms are no longer frequent and he believes he can still work so long as it does not require much lifting. AR 27, 85-87. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ reasonably found that Plaintiff's daily activities contradict his allegations of total disability. The record supports the ALJ's determination that Plaintiff's conditions are not as limiting as he alleges.

The ALJ also noted multiple inconsistencies with the medical evidence and a lack of medical treatment. AR 25-29. This determination is supported by substantial evidence in the record. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v.*

*Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Additionally, a claimant's statements may be less credible when treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1114. Plaintiff's allegation of completely debilitating pain limitations are contradicted by the medical record. Plaintiff has sought minimal treatment for his alleged physical and mental limitations. AR 27-28, 248. Physical examinations generally establish he is not as limited as alleged, including significant notations of unremarkable findings, no limitations in range of movement, normal gait, full range of motion, no difficulty with physical exam activities, full flexion, and 5/5 strength in all extremities. AR 28, 285-86, 301-02, 329-30, 349, 362. Mental examinations have also been largely unremarkable and detail normal thoughts, concentration, orientation, perception, memory, fund of knowledge, thought content; intact recent and remote memory; and that Plaintiff is pleasant, cooperative, and does not have an issue keeping up with the moderate pace of examination tasks. AR 27, 295, 308-09.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ properly weighed the medical opinion evidence.**

    **a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted

for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**b.  Frank Rosekrans, Ph.D.**

Dr. Rosekrans is an examining psychologist who completed a psychological evaluation for the Washington State Department of Social and Health Services in May 2013. AR 29-30, 292-99. Dr. Rosekrans opined that Plaintiff has moderate difficulties in work activities such as leaning new tasks, following detailed instructions, and maintaining appropriate behavior in a work setting; and Plaintiff has marked difficulties in basic work activities such as communicating effectively and completing a normal workday and workweek without interruptions of psychologically based symptoms. *Id*.

The ALJ assigned little weight to Dr. Rosekrans' opinion for multiple valid reasons. AR 30. First, the ALJ noted that Dr. Rosekrans' opinion is inconsistent

with the contemporaneous mental status examination that states Plaintiff was pleasant and cooperative and his mental functioning fell within normal limits in all categories but one. AR 295-96. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Additionally, the ALJ stated the opinion primarily consisted of a checkbox form without thorough explanation. AR 30. Check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Rosekrans' opinion.

### c. Jeanette Higgins, Psy.D.

Dr. Higgins is an examining doctor who completed a psychological assessment of the Plaintiff in July 2013. AR 307-12. Dr. Higgins opined that Plaintiff does not have the ability to respond appropriately to typical work situations and to changes in a routine work setting, but that he can likely function in a work environment that requires no more than simple, two-step commands or actions; Plaintiff would do best in a predictable, structured setting with low expectations that require no independent decision-making responsibilities; and Plaintiff has the ability to appropriately interact with a supervisor and co-workers who are tolerant and supportive, but that he cannot have interactions with the public or that involve more than two or three people at one time. AR 29, 311.

The ALJ assigned little weight to Dr. Higgins' opinion that Plaintiff does not have the ability to respond appropriately to typical work situations and changes in routine and the opinion that Plaintiff requires a supervisor and co-workers who are tolerant and supportive because these opinions are internally inconsistent with the remainder of the opinion and inconsistent with the contemporaneous mental status exam. AR 29. The ALJ assigned great weight to the remainder of Dr. Higgins' opinion. *Id*. The ALJ's determination is supported by the record. The ALJ notes

that Dr. Higgins' opinion regarding Plaintiff's inability to work is inconsistent with the remainder of the opinion that Plaintiff will be able to work with some limitations. *Id*. Additionally, the ALJ appropriately found some of the limitations in Dr. Higgins' opinion are inconsistent with the mental status exam detailing generally normal or average findings in nearly all aspects of the mental examination. AR 29, 308-09. As noted above, a discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Higgins' opinion.

\\

\\

### d. W. M. Shanks, M.D.

Dr. Shanks is an examining doctor who completed a physical functional evaluation in October 2013. AR 345-50. Dr. Shanks opined that Plaintiff is capable of lifting 20 pounds maximum and frequently lifting or carrying 10 pounds, walking or standing six out of eight hours per day, and sitting and using pushing or pulling arm or leg movements most the day. AR 348-50.

The ALJ assigned Dr. Shanks' opinion great weight. AR 30-31. Plaintiff does not take issue with the weight the ALJ assigned to this opinion, but briefly argues that the ALJ erred by not specifically addressing Dr. Shanks' diagnosis and severity ratings of Plaintiff's back impairments in the residual functional capacity determination. However, an ALJ need not discuss every piece of evidence submitted; rather, she must only explain why significant probative evidence has been rejected. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Additionally, the ALJ did address these impairment and limitations, first in finding them to be severe impairments at step two of the process, AR 21, and in considering all limitations in assessing Plaintiff's residual functional capacity, and specifically in limiting the Plaintiff to a reduced range of light work including postural, climbing, and reaching limitations, AR 25.

Thus, the Court finds the ALJ did not err in evaluating the medical opinion of Dr. Shanks or in the incorporation of the limitations opined to by Dr. Shanks in Plaintiff's residual functional capacity determination.

**C. The ALJ properly assessed Plaintiff's residual functional capacity and did not err at step five of the sequential evaluation process.**

Plaintiff briefly reargues that his assessed residual functional capacity and the resulting step five finding did not account for all of his limitations. The Court disagrees. The ALJ specifically stated that all symptoms consistent with the medical evidence were considered in assessing Plaintiff's residual functional capacity. AR 25. The record shows the ALJ did account for the objective medical limitations, so the Court finds no error. Additionally, the ALJ need not specifically include limitations in the hypothetical if they are adequately accounted for in the residual functional capacity. *See Stubbs-Danielson*, 539 F.3d 1169, 1173-76 (9th Cir. 2008). The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Id*. at 1175-76.

The ALJ properly framed the hypothetical question addressed to the vocational expert. Additionally, the vocational expert identified jobs in the national economy that exist in significant numbers that match the abilities of the Plaintiff. Thus, the Court finds the ALJ did not err in assessing Plaintiff's residual functional

capacity and the ALJ properly identified jobs that Plaintiff could perform despite his limitations.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 31st day of July, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19**